***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representative; or amend the Opinion and Award except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner in a pretrial agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates herein, an employment relationship existed between plaintiff and defendant.
3. Key Risk Management Services, Inc. is the administering agent for workers' compensation purposes.
4. Plaintiff's average weekly wage is $770.00. This yields a compensation rate of $513.36.
5. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment on 14 July 1998.
6. As a result of his admittedly compensable injury by accident on 14 July 1998, plaintiff received compensation from 26 August 1998 through 3 November 1998, and again from 10 November 1998 through 31 January 1999.
7. In addition to the deposition transcripts, the parties introduced into evidence in this matter stipulated Exhibits One and Two, which consist, respectively, of plaintiff's medical records and payroll records. Plaintiff introduced and the Deputy Commissioner admitted plaintiff's Exhibits One and Two, which consist, respectively, of a chart of the dates and times worked by plaintiff, and the denied medical expenses.
8. The issues to be determined as a result of this hearing are whether plaintiff's ongoing medical treatment was causally related to his admittedly compensable injury by accident, and to what additional, if any, medical and indemnity benefits is plaintiff entitled.
 *********** EVIDENTIARY RULING
Plaintiff's motion to admit additional evidence, which includes a letter from defense counsel to plaintiff's counsel and defendant's Form 28B to which defendants did not object is hereby granted and these items are made a part of the record. Further, plaintiff's motion to admit a work status report by plaintiff's treating physician is admitted subject to corroboration by his deposition testimony. However, plaintiff's motion to admit a facsimile dated August 9, 2002 from an individual at Oweida Orthopaedic Associates, to which defendants objected as hearsay is hereby denied.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 37 years old, married, and residing in Pageland, South Carolina. In 1998 plaintiff was employed as a field operations manager by defendant. In 2000 plaintiff's job with defendant changed to that of a dispatcher. Plaintiff's wages remained the same after his job changed from field operations manager to dispatcher.
2. On 14 July 1998, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment when he was hit in the stomach with a guard rail while attempting to dismantle it. As a result of this injury, plaintiff sustained an injury to his low back. Defendant admitted liability for plaintiff's injury by accident to his back, and paid temporary total disability compensation benefits at the weekly rate of $513.36 from 26 August 1998 through 1 November 1998, and again from 10 November 1998 through 31 January 1999.
3. Plaintiff initially came under the care of Dr. Alfred L. Rhyne, III, who treated plaintiff for complaints of low back and right leg pain. Dr. Rhyne treated plaintiff conservatively with physical therapy and medication. Dr. Rhyne ordered a CT scan that took place on 30 September 1998. These results were essentially normal, but showed mild lumbar spondylosis. Dr. James E. Rice evaluated plaintiff on 23 September 1998, and diagnosed lumbar strain. It was Dr. Rice's opinion that the treatment to that point had been appropriate.
4. Plaintiff then came under the care of orthopaedic surgeon Dr. Mark A. Hartman. Again plaintiff's complaints were of low back pain and right leg and right thigh pain. Dr. Hartman reread the CT scan performed earlier and detected significant foraminal stenosis at L5-S1. Dr. Hartman recommended a nerve root block at L5; however, this provided little relief to plaintiff. Although plaintiff was still complaining of pain, Dr. Hartman did not believe plaintiff was a surgical candidate, and released him to return to work with no restrictions on 27 January 1999. Dr. Hartman also released plaintiff from his care, to return on an as-needed basis, and assigned a two percent permanent partial impairment rating to plaintiff's spine.
5. Despite his release, plaintiff continued to experience pain; therefore, on 1 March 1999 plaintiff petitioned the Industrial Commission for ongoing medical treatment, contending that the servicing agent in this case had withdrawn medical management services and had refused to authorize additional medical treatment or evaluation. Defendant responded to plaintiff's motion and indicated that it was willing for plaintiff to be seen on a second opinion basis only, and that because plaintiff had been rated and released, that it did not see the need for ongoing medical case management activities. In fact, defendant denied all medical treatment after January 1999. On 13 April 1999, the Industrial Commission's Executive Secretary permitted plaintiff to be seen by a neurosurgeon of his choosing for evaluation.
6. Plaintiff was seen by Dr. Scott McLanahan on 4 May 1999. Dr. McLanahan noted persistent low back pain and right leg pain of undetermined etiology. Accordingly, Dr. McLanahan ordered an EMG and nerve conduction studies.
7. In June 1999 plaintiff again asked the Industrial Commission to intervene. This time plaintiff sought chiropractic treatment. Commissioner Thomas J. Bolch asked for input from defendant on the matter. It is unclear from the record whether the servicing agent approved this chiropractic treatment or whether plaintiff underwent any such treatment.
8. In early October 1999 plaintiff reported to Dr. Temisan Etikerentse, his family physician, with complaints of low back pain that radiated into his legs. Plaintiff reported to Dr. Etikerentse that he had had these complaints for a year. Plaintiff treated on a regular basis with Dr. Etikerentse through February 2001, both for his complaints of back pain with radiation into the legs and for other unrelated medical conditions. None of Dr. Etikerentse's treatment was paid for by defendant. Dr. Etikerentse's treatment for plaintiff's back pain consisted of conservative measures of medication and back exercises.
9. During his course of treatment of plaintiff, Dr. Etikerentse ordered various diagnostic tests. A nerve conduction study done in November 1999 was normal, as was an MRI done on 27 January 2000. On 8 June 2000, Dr. Etikerentse ordered x-rays because plaintiff complained of an increase in pain after feeling his back pop three days earlier. This June 2000 x-ray demonstrated no change from the x-ray taken in October 1999, so Dr. Etikerentse did not believe that plaintiff had sustained a new injury but that this was an increase of pain associated with the initial July 1998 injury by accident.
10. Plaintiff continued to experience pain. On 31 August 2000, he reported back to Dr. Hartman, the authorized treatment physician who had released plaintiff in January 1999 to return as needed. Plaintiff did not first seek authorization from the servicing agent in this case prior to reporting to Dr. Hartman; however, as noted, Dr. Hartman was plaintiff's authorized treating physician and had indicated that plaintiff could return as needed. Because plaintiff continued to have persistent complaints of pain, and because Dr. Hartman would not offer additional treatment to plaintiff, he referred plaintiff to Dr. Michael D. Getter for more aggressive treatment.
11. Plaintiff concedes that he did not seek authorization from defendant before seeing Dr. Getter. However, given the totality of the circumstances of this case, it was not unreasonable for plaintiff to do so. Dr. Hartman, who was plaintiff's authorized treating physician, referred plaintiff to Dr. Getter. The services performed by physicians who are referred by the authorized treating physicians are to be paid for by defendant unless the physician has been requested to obtain authorization to make such referral. There is insufficient evidence of record from which the Full Commission can find and hold by the greater weight that defendant required or requested Dr. Hartman to obtain authorization before making such a referral.
12. Plaintiff first saw Dr. Getter on 27 September 2000. Dr. Getter reviewed plaintiff's previous diagnostic studies, and ordered a discogram. Based upon the potentially positive results of the discogram, Dr. Getter offered surgery. On 31 January 2001, Dr. Getter performed an anterior lumbar interbody fusion at L5-S1, during which it was discovered that plaintiff had a radial tear in the disc. Prior to this surgery, plaintiff filed a Form 33 to request a hearing on the grounds that plaintiff had suffered a change of condition that warranted additional medical treatment.
13. The medical testimony indicates that the radial tear found by Dr. Getter in the course of the surgery could have occurred as a result of plaintiff's admittedly compensable injury by accident of July 1998.
14. Plaintiff tolerated the surgery well, and afterwards obtained good results from the surgery. He underwent a course of physical therapy, including pool therapy, and is greatly improved as compared to prior to the surgery. After plaintiff recovered from the surgery, Dr. Getter released plaintiff to return to work with no restrictions. Dr. Getter did not assign a permanent partial impairment rating different from Dr. Hartman's previous two percent rating.
15. Plaintiff's complaints of low back pain and radiating right leg pain were consistent from the date of the injury through the time he came under the care of Dr. Getter. Furthermore, although there was some testimony that plaintiff may have fallen at work in 1999 or 2000, there is no evidence from which the undersigned can find and hold by its greater weight that plaintiff suffered any injuries as a result of any intervening event. Instead, the greater weight of the evidence shows that plaintiff's complaints of back and right leg pain were consistent from the date of the injury, and that as a result, plaintiff's ongoing complaints of back and right leg pain were caused by his admittedly compensable injury by accident.
16. Dr. Getter's treatment of plaintiff, including the surgery performed on 31 January 2001, was reasonable, related to plaintiff's initial injury by accident, and reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability.
17. Plaintiff did not work in any capacity after his surgery from 6 February 2001 through 16 April 2001. Thereafter, plaintiff returned to work for defendant, but there were several periods of time after the surgery that he was not able to earn his full pre-injury wages.
18. While plaintiff should have consulted with the serving agent prior to receiving treatment by Dr. Getter by filing a Form 18M, for the reasons set forth hereinabove, it was not unreasonable for plaintiff to seek treatment without seeking permission from the servicing agent.
19. There is insufficient evidence of record from which the Full Commission can find and hold by the greater weight that between January 1999 and January 2001 plaintiff suffered any periods of total or partial disability relating to his admittedly compensable injury by accident. While plaintiff may have missed some periods of work during this two-year period, there is insufficient competent medical evidence of record taking plaintiff out of work or limiting his work ability during this time.
20. As plaintiff has not yet reached maximum medical improvement there is insufficient evidence as to the permanent rating that plaintiff should receive.
 ***********
The foregoing stipulations and findings of fact result in the following additional
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment on 14 July 1998. N.C. Gen. Stat. § 97-2(6).
2. As a result of this admittedly compensable injury by accident, plaintiff injured his back. This injury could or might have caused a radial tear at L5-S1 and ultimately required surgical intervention. Clickv. Pilot Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
3. While plaintiff should have sought authorization for the additional medical treatment by filing a Form 18M or by making some other appropriate motion, plaintiff's failure to do so was not unreasonable given the fact that referrals from Dr. Hartman, the authorized treating physician, should have been honored by defendant pursuant to I.C. Rule 407(4). Additionally, the Commission has the discretion to award or approve ongoing or additional medical treatment pursuant to N.C. Gen. Stat. §§ 97-25, 97-25, and 97-25.3(c).
4. Moreover, defendant must not rely upon the requirement for preauthorization if services are rendered in the treatment of a specific medical condition for which defendant has not authorized payment for treatment although defendant admits a compensable injury. N.C. Gen. Stat. § 97-25.3(b)(3).
5. As a result of his compensable injury by accident to his back, and in light of the foregoing, plaintiff received reasonable medical treatment, including Dr. Etikerentse's treatment relating to plaintiff's back pain, and Dr. Getter's treatment and surgery, that was reasonably necessary to effect a cure, give relief, or lessen the period of his disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25. Accordingly, defendant should provide plaintiff with medical compensation for his treatment with Dr. Getter and Dr. Etikerentse's treatment of plaintiff's back complaints.
6. As a result of his admittedly compensable injury by accident, plaintiff was temporarily totally disabled from 6 February 2001 through 16 April 2001 and is entitled to compensation therefore. N.C. Gen. Stat. § 97-29.
7. As plaintiff has not reached maximum medical improvement, the issue of a permanent partial disability rating cannot be determined. N.C. Gen. Stat. § 97-31.
8. After 16 April 2001, plaintiff sustained several periods of temporary partial disability, and is entitled to compensation. N.C. Gen. Stat. § 97-30.
 ***********
The foregoing findings of fact and conclusions of law result in the following
 AWARD
1. Subject to the attorney's fee approved herein, defendant shall pay to plaintiff temporary total disability compensation at the weekly rate of $513.36 for the period of time from 6 February 2001 through 16 April 2001. Said compensation has accrued and shall be paid in a lump sum.
2. Subject to the attorney's fee approved herein, defendant shall pay to plaintiff temporary partial disability compensation in the appropriate amounts for any periods of time after 16 April 2001 that he was temporarily partially disabled pursuant to his compensable injury. Said compensation has accrued and shall be paid in a lump sum.
3. Defendant shall provide plaintiff with all related medical treatment provided by Dr. Etikerentse, Dr. Hartman, and Dr. Getter, including the surgery performed in January 2001.
4. The issue of the permanent rating for plaintiff's back is reserved until plaintiff is determined to be a maximum medical improvement. The parties may agree to a permanent rating when plaintiff is at maximum medical improvement or submit to the Industrial Commission documentation from plaintiff's rating physician.
5. Defendant shall bear the costs of this hearing.
This the 1st day of April, 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING IN RESULT ONLY:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER